UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JERMAINE TYRONE FULLER, | ) | Civil Action No.: 4:12-cv-2755-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| JAMES F. ARWOOD, ANDRZEJ E. KALINSKI, and TAMMY DOVER, | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**I.      INTRODUCTION**

In this action, Plaintiff, who is proceeding pro se, alleges that Defendants violated his constitutional rights. Presently before the Court is Defendants James Arwood and Tammy Dover's Motion for Summary Judgment (Document # 55)[1]. Because he is proceeding pro se, Plaintiff was warned pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the motion for summary judgment could result in the motion being granting, resulting in dismissal of his claims. After receiving an extension of time, Plaintiff timely filed his response (Document # 70). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. This Report

---

[1] Defendant Kalinski has not been served with the complaint and has not made an appearance in this action. See USM-285 Returned Unexecuted (Document # 44). Although prisoners proceeding in forma pauperis must rely on the United States Marshals Service to serve their complaints, they are responsible for providing information sufficient to identify the defendants to allow the Marshals to serve them. For Kalinski, Plaintiff provided the address for the York County Detention Center. When the Deputy Marshal attempted to serve Kalinski at that address, he was informed that Kalinski had not worked there in several years. The Deputy Marshal noted that he was unable to locate this defendant with the information provided by Plaintiff. For these reasons, it is recommended that Defendant Kalinski be dismissed from this action pursuant to Fed.R.Civ.P. 4(m).

and Recommendation is entered for review by the district judge.

## II.     FACTS

Plaintiff was initially booked into the York County Detention Center (YCDC) on December 20, 2008.  At that time, he underwent a reception screening as part of the YCDC medical intake process, which revealed no previous or existing medical or mental health issues.  Dover Aff. ¶ 5 (Ex. to Def. Motion). On December 27, 2008, he felt that he had been drugged after eating.  Pl. Aff. ¶ 1 (Ex. to Pl. Resp.).  Thereafter, he frequently felt as if he was being drugged or hypnotized.  Pl. Aff. ¶ 2.  On February 5, 2009, he told officers that he wanted to be taken to the hospital to be examined to determine whether he had been drugged and/or sexually abused.  Pl. Aff. ¶ 3.

Plaintiff began fasting to determine if the food was causing his mental disturbances as well as for spiritual reasons.  Pl. Aff. ¶ 4.  Plaintiff went on three, seven, and ten day fasts multiple times. Pl. Aff. ¶ 5.  On March 16, 2009, Lt. Tamyra Bright advised the medical unit that Plaintiff was apparently starving himself and had undergone severe weight loss.  Dover Aff. ¶ 7.  Later that day, Plaintiff was seen in the medical unit, where he informed the nurse he did not eat for three days to "cleanse himself," but he had started eating again.  Dover Aff. ¶ 8.  The nurse explained to Plaintiff that his actions could be considered a "hunger strike," which could result in him being placed on suicide watch.  Dover Aff. ¶ 8.  Plaintiff indicated that he did not want that to occur.  Dover Aff. ¶ 8.

On May 18, 2009, Plaintiff was seen by Dr. Kalinski, the contract physician for YCDC. Dover Aff. ¶ 9.  Plaintiff advised him that he was not eating for religious reasons, and he intended to fast through and until May 25, 2009.  Dover Aff. ¶ 9.  At that time, Plaintiff, who was six feet tall, weighed 137 pounds, which was down from 170 pounds on December 31, 2008.  Dover Aff. ¶ 9.

Dr. Kalinski noted that Plaintiff was well-hydrated and his skin turgor was normal. Dover Aff. ¶ 9.

On May 22, 2009, Susan Burns, LMSW, performed a mental health evaluation with respect to his continued and/or persistent fasting. Dover Aff. ¶ 10. Plaintiff advised that his fasting was a personal choice between himself and God. Dover Aff. ¶ 10. Burns recommended intensive observations so that Plaintiff could be monitored for possible psychosis. Dover Aff. ¶ 10 and Ex. A. Plaintiff was also seen by a nurse and, as a result of Burns' recommendation, and Plaintiff's refusal to eat or drink, he was placed on suicide watch pursuant to YCDC policy and taken to the booking area for monitoring. Dover Aff. ¶ 11 and Ex. B. On May 26, 2009, Plaintiff was seen by Nurse Dover, who determined that he should remain on suicide watch. Dover Aff. ¶ 12. On May 28, 2009, Plaintiff was seen by Dr. Kalinski, who noted that Plaintiff had been eating for 72 hours and allowed Plaintiff to return to the regular ward. Dover. Aff. ¶ 13. A mental health evaluation was to be rescheduled for the following week. Dover Aff. ¶ 13. A follow-up mental exam did not take place. Pl. Aff. ¶ 5.

Beginning August 2, 2009, Plaintiff fasted for forty days until September 11, 2009. Pl. Aff. ¶ 6. He did not fast with the intention of harming himself, but, rather, for spiritual reasons. Pl. Aff. ¶ 7. On August 31, 2009, Plaintiff was seen by Dr. Kalinski because of his refusal to take his blood pressure medicine. Dover Aff. ¶ 14. Plaintiff signed a waiver, acknowledging the risks of failing to take such medication. Dover Aff. ¶ 14 and Ex. C.

On September 9, 2009, given Plaintiff's overall weight loss since the time he was booked, he was returned to the booking area for medical observation for the purpose of monitoring all intake. Dover Aff. ¶ 15. The plan was for Plaintiff to remain on medical observation for his own safety and security and that his weight be checked weekly. Dover Aff. ¶ 15. He was to remain in that status

until he received medical clearance from Dover and Dr. Kalinski. Dover Aff. ¶ 15. On September 10, 2009, Plaintiff was taken to Piedmont Medical Center for a mental health evaluation. Dover Aff. ¶ 17 and Ex. D. During his hospital stay, a complete psychiatric preadmission screening assessment was performed by a hospital psychiatric nurse. Dover Aff. ¶ 17 and Ex. E. Plaintiff was diagnosed with purposeful anorexia, acute or chronic weight loss, and cachexia/emaciation, gaunt. Dover Aff. ¶ 18 and Ex. F. No further intervention was indicated and Plaintiff returned to YCDC. Dover Aff. ¶ 18.

Upon Plaintiff's return to YCDC, Dover began researching the best possible options to ensure Plaintiff's health care needs were addressed, including the option to transfer Plaintiff to Just Care, a detention healthcare facility for intensive mental health assessment and/or counseling. Dover Aff. ¶ 19. On September 14, 2009, Dover was contacted by both a booking officer and a booking supervisor that Plaintiff had been receiving extra food and had been eating all or most of the increased portions. Dover Aff. ¶ 20.

On September 15, 2009, Plaintiff was reassigned to Medical Unit, Cell No. M4 to isolate him, evaluate his particular needs so that his underlying medical issues could be addressed, and provide more direct observation and intensive monitoring. Dover Aff. ¶ 21; Arwood Aff. ¶¶ 19-20. Plaintiff avers that he was in "solitary confinement" from September 15, 2009, to November 17, 2009, and was never seen by a psychiatrist or anyone else. Pl. Aff. ¶ 10. Dover avers that between September 16, 2009, and October 28, 2009, Plaintiff had approximately eleven follow-up visits with medical unit nurses, primarily for checking his vital signs and weight. Dover Aff. ¶ 22. His lowest weight recorded was 123.4 pounds and his highest weight was 138.4 pounds. Dover Aff. ¶ 22. While it was noted on two occasions that Plaintiff was not eating, every other visit indicated that he

was eating well and had no medical complaints due to malnourishment.  Dover Aff. ¶ 22.

Shortly after being placed in "solitary confinement," Plaintiff's window was tinted, which caused Plaintiff to be disoriented as to time and date.  Pl. Aff. ¶ 11.  In addition, Plaintiff believed YCDC staff were taunting him with strange sounds and voices and he began to develop nerve problems.  Pl. Aff. ¶¶ 13, 15.  Plaintiff became convinced he was supposed to die in his cell and began clamping his jaw up and down "to make this happen."  Pl. Aff. ¶ 14.  On November 18, 2009, Plaintiff's condition was reassessed and considered stable.  Dover Aff. ¶ 23.  He was reassigned to a maximum unit at that time.  Dover Aff. ¶ 23; Pl. Aff. ¶ 16.  Plaintiff was released from YCDC on November 24, 2009.

Plaintiff alleges that he suffers psychologically with paranoia and physically (including loss of vision) from poor lighting and starvation as a result of Defendants' actions.  Pl. Am. Comp. p. 3.

### III.   STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. at 322.  Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could

reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.     DISCUSSION

Defendants argue that Plaintiff failed to exhaust his administrative remedies prior to filing this action. The Prison Litigation Reform Act ("PLRA") requires that a prisoner[2] exhaust the available administrative remedies before filing a § 1983 action concerning conditions of his

---

[2] A "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law." § 1997e(h). Thus, exhaustion of administrative remedies is also required of pretrial detainees such as Plaintiff here.

confinement. 42 U.S.C.1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). Accordingly, before Plaintiff may proceed with his claims in this court, he must first exhaust his administrative remedies. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); see Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir.2001) (exhaustion required even though Plaintiff claimed futility); Larkin v. Galloway, 266 F.3 d 718 (7th Cir.2001) (exhaustion required even though Plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001) (unpublished opinion) (applying Booth v. Churner to affirm district court's denial of relief to Plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).

It is undisputed that Plaintiff failed to file any grievances with respect to the claims alleged in this action. However, Plaintiff argues that the grievance system was unavailable to him because the issues he raises are not grievable under the YCDC grievance policy. Although not specifically stated in his amended complaint, Plaintiff specifies in his response that he is alleging Defendants were deliberately indifferent to his serious medical needs. Plaintiff notes that the grievance policy

for the YCDC provides that "medical decisions are not grievable under this policy ...." Arwood Aff. Ex. B. As such, Plaintiff argues, he had no available remedies to exhaust. However, the policy specifically includes violations of civil rights as a grievable item. Arwood Aff. Ex. B. Plaintiff argues that he received no medical attention for approximately two months while he was in solitary confinement. Thus, he is not complaining of any medical decisions made but, rather, a complete lack of medical care which he claims violated his civil rights.[3] Accordingly, his complaints were grievable, and his failure to exhaust his administrative remedies is fatal to this action. Summary judgment is appropriate.

## IV.    CONCLUSION

For the reasons discussed above, it is recommended that Defendants James Arwood and Tammy Dover's Motion for Summary Judgment (Document # 55) be granted, Defendant Kalinski be dismissed pursuant to Fed.R.Civ.P. 4(m), and this case be dismissed in its entirety.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

October 30, 2014
Florence, South Carolina

**The parties are directed to the important information on the following page.**

---

[3] To the extent Plaintiff complains that Defendants violated his constitutional rights by tinting the windows in his cell, such a claim would also fall within the list of grievable items in the grievance policy. In addition, if Plaintiff claims that his constitutional rights were violated as a result of being placed on suicide watch or in the medical observation unit, his claim fails. Prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. Hewitt v. Helms, 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).